UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RYAN MCCORD CLARK,** ) | |
| ) | |
| **Movant,** ) | |
| ) | |
| v. ) | **Case No. 2:22-cv-08019-KOB** |
| ) | **2:06-cr-245-SLB** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

# **MEMORANDUM OPINION**

This matter comes before the court on Ryan McCord Clark's *pro se* "Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255." (Cv. Doc. 1). Mr. Clark pled guilty in 2006 to five criminal charges relating to child pornography and sexual exploitation of minors. (Cr. Docs. 5, 17).[1] He is currently serving a 360-month sentence at FCI Texarkana, with a projected release date of December 8, 2031.

Mr. Clark collaterally attacks his conviction on many grounds in several wide-ranging filings totaling well over 200 pages. *See* (cv. docs. 1, 2, 4, 6, 10, 11, 12, and 14). The court liberally construes Mr. Clark's filings because he is

---

[1] Documents from Mr. Clark's criminal matter, case number 2:06-cr-245-SLB, are designated "Cr. Doc. ___." Documents from Mr. Clark's § 2255 action, case number 2:22-cv-08019-KOB, are designated "Cv. Doc. ___."

1

proceeding *pro se*. *See Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000). However, before reaching the merits of Mr. Clark's arguments, the court must determine whether his § 2255 motion was timely. As discussed below, Mr. Clark filed his motion well outside the one-year window for actions under § 2255, and the court concludes that he has not met the requirements for any exception to the one-year time limitation. So, the court will deny Mr. Clark's motion as untimely filed without reaching its merits.

I.   BACKGROUND

On April 4, 2006, Mr. Clark responded to an ad placed on the website Craigslist by an undercover law enforcement officer advertising "Lolita and lad" escorts, asking for "more details" about "your services in central Alabama."[2] The officer responded that the "escorts" were 10-15 years old and urged Mr. Clark that "if this is not the type of service you want or thought it was[,] do both of us a favor and DELETE all correspondence." Mr. Clark responded that he "prefer[red] around 12-13 but could make do with older/younger." (Cr. Doc. 17 at 3-4).

Mr. Clark exchanged several more emails with the undercover officer in which he asked numerous questions and ultimately arranged an encounter with a purported 11-year-old girl. Mr. Clark mailed halves of three one-hundred-dollar bills as advance, partial payment to a post office box that the undercover officer

---

[2] Because Mr. Clark pled guilty, the court takes these facts from his plea agreement.

provided. FBI agents used administrative subpoenas to determine that the email address with which the undercover officer had been corresponding belonged to Mr. Clark. (Cr. Doc. 17 at 4-8).

Mr. Clark traveled from Maryland to Birmingham, Alabama on April 19, 2006, where officers arrested him upon his arrival at a hotel. Mr. Clark received his *Miranda* warning and refused to answer questions without an attorney. Upon arresting him, officers searched a bag Mr. Clark had brought to the hotel room and found that it contained a video camera, a digital camera, multiple condoms, personal lubricant, a blindfold, and the other halves of the bills previously mailed as partial payment for the encounter. (Cr. Doc. 17 at 8). A grand jury indicted Mr. Davis in June 2006 on six charges relating to child pornography and sexual exploitation and a count of forfeiture, all stemming from his April 2006 trip to Birmingham.

    A.    <u>Plea and Sentencing</u>

On July 28, 2006, Mr. Clark entered an agreement to plead guilty to five of the six charges in the indictment. In exchange, the government agreed to dismiss Count Five of the indictment after Mr. Clark was sentenced. (Cr. Doc. 17). On November 16, 2006, the court sentenced Mr. Clark to three terms of 360 months, one term of 240 months, and one term of 120 months, all to be served

concurrently. (Cr. Doc. 22). Mr. Clark did not take a direct appeal of his conviction and sentence.

    B.    <u>Habeas Case</u>

Mr. Davis filed his habeas petition and three related filings on June 6, 2022. (Cv. Docs. 1-4). The court ordered Mr. Clark to show cause why it should not dismiss his claim as untimely on July 27, 2022; Mr. Clark submitted his response on September 1, 2022. (Cv. Docs. 7, 10). The court then ordered the government to respond to Mr. Clark's arguments on the timeliness of his motion, and the government filed its response on January 31, 2023. (Cv. Docs. 13, 16). Finally, the court ordered Mr. Clark to reply to the government's response, which he did on March 7, 2023. (Cv. Docs. 17, 18). Along the way, Mr. Clark submitted several other filings in support of his petition, prompting the court to issue an order on January 18, 2023 denying his motion to file another amended § 2255 motion and reiterating that it was presently evaluating only the timeliness of his initial motion and that if it found the petition timely, it would consider all grounds raised in his several filings up to that point. (Cv. Doc. 15).

## II. LEGAL STANDARD

At this stage, the court focuses solely on whether Mr. Clark's motion is timely. Pursuant to the Antiterrorism and Effective Death Penalty Act, a defendant must bring his § 2255 petition within one year of (1) the date his conviction

becomes final; (2) the date on which any unconstitutional government act preventing him from filing his petition ceases; (3) the date the Supreme Court initially recognizes a new and retroactively applicable right that forms the basis of his petition; or (4) the date on which the facts supporting the claim(s) he presents "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f). A court may equitably toll AEDPA's statute of limitations *only* if the petitioner establishes that he filed untimely "because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Outler v. United States*, 485 F.3d 1273, 1280 (11th Cir. 2007) (quoting *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000)).

One other avenue permits a federal habeas petitioner to bring a claim after the statute of limitations has run: a showing of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations."). Nevertheless, the bar for actual innocence claims is quite high: a prisoner must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Permitting actual innocence claims but requiring an overwhelming evidentiary showing is the means by which the court system "seeks to balance the

societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup,* 513 U.S. at 324.

### III. DISCUSSION

The court entered judgment in Mr. Clark's case on November 16, 2006. (Cr. Doc. 22). Because Mr. Clark did not take a direct appeal of his conviction, it became final upon the expiration of the time for appeal—fourteen days later—on November 30, 2006. *See Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011) (citing *Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000)); Fed. R. App. Pro. 4(b)(1)(A) (criminal defendant must appeal within 14 days of entry of judgment). So, the AEDPA's one-year statute of limitations required that Mr. Clark file any federal habeas motion before November 30, 2007. Mr. Clark, however, did not file his § 2255 petition until June 2022, nearly 15 years after the statute of limitations had run. (Cv. Doc. 1). So, the court can consider the merits of Mr. Clark's motion only if he has demonstrated grounds for the court to equitably toll the statute of limitations or that he is actually innocent.

*Equitable Tolling*

Mr. Clark has not shown "extraordinary circumstances that are both beyond his control and unavoidable even with diligence" as required for equitable tolling. *Outler*, 485 F.3d at 1280. While Mr. Clark's response to the court's order to show

6

cause why it should not dismiss his claim as untimely focuses on his "actual innocence" claim, he also argues that difficulty accessing legal materials and the court system during his incarceration constituted extraordinary circumstances that prevented him from filing a § 2255 petition.

    But Mr. Clark's claim that these circumstances are extraordinary impediments that rendered filing his § 2255 petition impossible even with diligence rings hollow. First, Mr. Clark filed two motions in his criminal case in May 2007. (Cr. Docs. 24, 25). He also relates that he filed a civil case against one of the facilities in which he was incarcerated. (Cv. Doc. 10 at 30). Again in 2014, Mr. Clark filed two motions to unseal documents in his criminal case. (Cr. Docs. 29, 30). And in 2020, Mr. Clark filed a motion for compassionate release. (Cr. Doc. 36). So, without deciding whether the circumstances Mr. Clark details could justify equitable tolling during some portion of the time between expiration of the statute of limitations and his filing in June 2022, they plainly were not such extraordinary obstacles as to prevent him from accessing the court system during that entire period of more than 14 years. Accordingly, Mr. Clark has shown neither reasonable diligence nor extraordinary circumstances, and the court will not equitably toll the statute of limitations.

    *Actual Innocence*

Nor has Mr. Clark demonstrated "actual innocence," which would permit him to obtain relief despite filing his § 2255 petition after the statute of limitations has run. Mr. Clark spills much ink explaining a theory that amounts to this: he knew the undercover officer with whom he communicated via email was conducting a sting operation and intentionally walked into a trap for the purpose of getting arrested because he was ashamed of his desires for underage children and feared that he might harm someone if he remained free. *See generally* (cv. doc. 10 at 2-20). The court's task is *not* to decide whether *some* reasonable juror could maintain a reasonable doubt regarding Mr. Clark's guilt based on the account he provides; rather, the inverse is true: so long as some reasonable juror could find Mr. Clark guilty, his conviction must stand. *Schlup*, 513 U.S. at 329.

The factual record before the court—none of which Mr. Clark disputes is true—is more than sufficient for a reasonable juror to conclude that Mr. Clark actually traveled across state lines to engage in sex with a minor and to produce child pornography. Most tellingly, Mr. Clark arrived at the hotel with a bag containing condoms, personal lubricant, a blindfold, a digital camera, and another video camera. (Cr. Doc. 17 at 8). He offers no reason why a man deliberately walking into a trap to be arrested, if he had no actual intention of engaging in sexual activities, would bring these items with him.

Moreover, the email exchanges between Mr. Clark and the officer are replete with unsavory details from which a juror could infer actual intent to commit the offense—specification of the age and body type Mr. Clark preferred, requests to keep the victim's undergarments as souvenirs, a note about his latex allergy, inquiries about whether particular girls would engage in particular sexual acts, and requests to take pictures of his encounter "for my viewing pleasure." (Cr. Doc. 17 at 4-7). Again, Mr. Clark offers no explanation why he arranged the encounter in such detail despite purportedly not intending to follow through on any of it. So, a reasonable juror could certainly infer from the evidence described above that Mr. Clark traveled to Birmingham for the purpose of engaging in sexual activities with a minor and taking photos and/or video footage of the same.

A secondary aspect of Mr. Clark's argument is an "elements-based showing of actual innocence." (Cv. Doc. 18 at 5). In essence, Mr. Clark argues that even assuming his intent to follow through on the arrangements, meeting a minor for a sexual encounter does not qualify as "obtain[ing] custody or control" of that minor for the purpose of creating child pornography. Mr. Clark's argument fails for at least two reasons. First, he cites *United States v. Buculei*, 262 F.3d 322 (4th Cir. 2001), but the majority opinion in *Buculei* rejected the theory Mr. Clark advances here; the court held that a jury could find that a sexual encounter with a minor in a hotel "fully satisfied" the custody or control element of 18 U.S.C. § 2251A(b), the

statute at issue in both that case and Mr. Clark's. 262 F.3d at 332. As the court in *Buculei* noted, the statutory definition of custody or control "includes temporary supervision or responsibility for a minor whether legally or illegally obtained." 262 F.3d at 331-32 (citing 18 U.S.C. § 2256(7)).

Second, Mr. Clark argues that he was "not in control" because the undercover agent communicated certain limitations on what sexual activities the purported minor would engage in. (Cv. Doc. 10 at 7). Such purported limitations, however, do not negate the custody or control element. As the undercover agent described the arrangements to Mr. Clark in one email, "When you arrive me and you will have our greetings and take care of the business part[,] then you and the girl will have your fun. I will leave you and her alone until I pick her up. I will call the room prior to coming in." (Doc. 1-2 at 57). In other words, Mr. Clark paid to be alone in a hotel room with a minor, giving him "temporary supervision of her,"—a circumstance expressly within the statutory definition of custody or control. 18 U.S.C. § 2256(7).

For all the reasons explained above, Mr. Clark therefore falls woefully short of the standard for an "actual innocence" exception to the AEDPA's statute of limitations.

## IV.   CONCLUSION

Mr. Clark filed his petition nearly 15 years after the statute of limitations ran on his § 2255 claims. The circumstances of his incarceration did not prevent him from making other court filings and do not rise to an extraordinary circumstance that would justify equitable tolling. Finally, Mr. Clark's actual innocence claim falls far short of the rigorous standard required for the extraordinary step of granting habeas relief outside the AEDPA's statute of limitations based on a defendant's "actual innocence." So, the court will DENY Mr. Clark's motion for relief under 28 U.S.C. § 2255.

**DONE** and **ORDERED** this 13th day of June, 2023.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE